No. 26-2439

# In the United States Court of Appeals for the Seventh Circuit

RACHAEL ROSE,

*Plaintiff-Appellant*,

*v.*

ABBOTT LABORATORIES, INC.,
AND COLLEEN LEWIS,

*Defendants-Appellees*.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
NO. 1:25-CV-01604, HON. MANISH S. SHAH

**OPENING BRIEF AND REQUIRED SHORT APPENDIX OF PLAINTIFF-APPELLANT RACHAEL ROSE**

KEVIN M. GROSS
ZIPKIN WHITING CO., L.P.A.
3637 Green Road, Second Floor
Beachwood, Ohio 44122
Phone: (216) 514-6400
Fax: (216) 514-6406
kgross.zipkinwhiting@gmail.com

*Counsel for Plaintiff-Appellant Rachael Rose*

Save As Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2439

Short Caption: Rose v. Abbott Laboratories, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rachael Rose

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Zipkin Whiting Co., L.P.A.

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kevin M. Gross Date: October 29, 2026

Attorney's Printed Name: Kevin M. GRoss

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 3637 Green Road, Second Floor

Beachwood, Ohio 44122

Phone Number: (216) 514-6400 Fax Number: (216) 514-6406

E-Mail Address: kgross.zipkinwhiting@gmail.com

rev. 12/19 AK

## Table of Contents

Table of Contents .......... i

Table of Authorities .......... ii

I. Jurisdictional Statement .......... 1

II. Statement of the Issues .......... 3

III. Statement of the Case .......... 5

IV. Summary of the Argument .......... 9

V. Argument .......... 11

A. The standard of review .......... 11

B. The district court erred in dismissing Rose's hostile work environment claim by concluding as a matter of law that the facts presented were insufficient to demonstrate either severe or pervasive discrimination .......... 11

C. The district court erred in dismissing Rose's derivative aiding-and-abetting claim because the facts presented below were sufficient to set forth a primary hostile work environment claim 16

VI. Conclusion .......... 18

Certificate of Compliance .......... 19

Certificate of Service .......... 20

## Table of Authorities

### Federal Cases

*Adams v. Austal, U.S.A., L.L.C.*,
754 F.3d 1240 (11th Cir. 2014) .......... 14

*Carter v. Chrysler Corp.*,
173 F.3d 693 (8th Cir. 1999) .......... 15

*Chaklos v. Stevens*,
560 F.3d 705 (7th Cir. 2009) .......... 11

*Cummings v. Greater Cleveland Reg'l Transit Auth.*,
88 F. Supp. 3d 812 (N.D. Ohio 2015) .......... 16

*Hawkins v. Anheuser-Busch, Inc.*,
517 F.3d 321 (6th Cir. 2008) .......... 13

*Hostetler v. Quality Dining, Inc.*,
218 F.3d 798 (7th Cir. 2000) .......... 12

*Jackson v. County of Racine*,
474 F.3d 493 (7th Cir. 2007) .......... 15

*Jackson v. Quanex Corp.*,
191 F.3d 647 (6th Cir. 1999) .......... 13

*Jordan v. City of Cleveland*,
464 F.3d 584 (6th Cir. 2006) .......... 13

*Luke v. City of Cleveland*,
No. 1:02-cv-01225, 2005 WL 2245187 (N.D. Ohio Aug. 22, 2005) .......... 16

*Mobley v. Allstate Ins. Co.*,
531 F.3d 539 (7th Cir. 2008) .......... 11

*Oncale v. Sundowner Offshore Serv., Inc.*,
523 U.S. 75 (1988) .......................................................................... 15

*Oster v. Huntington Bancshares Inc.*,
No. 2:15-cv-02746, 2017 WL 2215462 (S.D. Ohio May 19, 2017)........ 16

*Robinson v. Jacksonville Shipyards, Inc.*,
760 F. Supp. 1486 (M.D. Fla. 1991) ..................................................... 14

*Siwik v. Cleveland Clinic Found.*,
No. 1:17-cv-01063, 2019 WL 1040861 (N.D. Ohio Mar. 5, 2019) ........ 17

*Turner v. Saloon, Ltd.*,
595 F.3d 679 (7th Cir. 2010) ............................................................... 12

**State Cases**

*Hampel v. Food Ingredient Specialties, Inc.*,
89 Ohio St.3d 169 (2000) ............................................... 9, 12, 13, 14, 15

*Hauser v. Dayton Police Dep't*,
140 Ohio St.3d 268, 2014-Ohio-3636 ................................................... 17

*State v. Stepp*,
117 Ohio App.3d 561 (4th Dist. 1997) ................................................. 17

**Federal Statutes**

28 U.S.C. § 1291 .......................................................................................... 2

28 U.S.C. § 1331 .......................................................................................... 1

28 U.S.C. ¶ 1404 .......................................................................................... 1

28 U.S.C. § 1441(b) ...................................................................................... 1

28 U.S.C. § 1446 .......... 1

28 U.S.C. § 2107(a) .......... 2

42 U.S.C. § 2000e .......... 1

## State Statutes

Ohio Rev. Code 4112.02(A) .......... *passim*

Ohio Rev. Code 4112.02(J) .......... *passim*

## Federal Rules

FED. R. APP. P. 4(a)(1)(A) .......... 2

FED. R. CIV. P. 56(c) .......... 11

# I. JURISDICTIONAL STATEMENT

Rose originally filed this discrimination case in the Cuyahoga County Court of Common Pleas in the State of Ohio under Chapter 4112 of the Ohio Revised Code. Abbott Laboratories and Lewis timely removed the case to the United States District Court for the Northern District of Ohio under 28 U.S.C. §§ 1441(b) and 1446 based on diversity of citizenship. Rose is a citizen of the State of Ohio, Abbott Laboratories is a citizen of the State of Illinois (principal place of business) and the State of Delaware (incorporation), and Lewis is a citizen of the State of Pennsylvania; further, the amount in controversy exceeded $75,000. Rose then filed an amended complaint asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, giving the United States District Court for the Northern District of Ohio federal question jurisdiction under 28 U.S.C. § 1331.

This case was then transferred to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404 based on the presence of a forum selection clause contained in Rose's employment agreement with Abbot Laboratories.

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's June 9, 2026 order granting summary judgment is a final order. App. A16. There are no motions pending before the district court. Rose timely filed her notice of appeal under FED. R. APP. P. 4(a)(1)(A) and 28 U.S.C. § 2107(a) on July 7, 2026. App. A17–18.

## II. Statement of the Issues

The first issue presented is whether, by ruling that a "reasonable jury could conclude that the alleged harassment—smacking her butt, pressuring her to drink, expecting her to have weekly dinner with clients—was 'because of sex,'" the district court erred by dismissing Rose's hostile work environment based on sex claim because "little in the record indicates that [Rose] was contemporaneously bothered by Lewis's conduct." App. A14–15. The correct legal standard, however, focuses on whether the discriminatory conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment—not whether a victim managed to endure the sexual harassment perpetrated by her supervisor. The second issue is whether the district court erred in dismissing Rose's aiding and abetting discrimination claim against Lewis, who was Rose's direct supervisor at Abbott Laboratories. *Id.* at 15.

Summarily, the issues presented on this appeal are whether, despite the record evidence, the district court erred in granting summary judgment to Abbott Laboratories and Lewis by determining Rose presented insufficient facts to state a triable claim. Rose submits that the

district court erred both in its analysis of the facts and in its interpretation of relevant law.

## III. Statement of the Case

Rose asserted three claims under Ohio's antidiscrimination laws: (1) hostile work environment based on sex and gender in violation of Ohio Rev. Code 4112.02(A); (2) wrongful termination based on sex and gender in violation of Ohio Rev. Code 4112.02(A); and (3) aiding and abetting discrimination in violation of Ohio Rev. Code 4112.02(J). App. A8.; R. 16, Amended Compl. ¶¶ 65–107. The first two claims are asserted against Abbott Laboratories, and the third claim is asserted against Lewis individually, a unique aspect of Ohio law distinct from the lack of individual liability under Title VII.

The district court's opinion and order granting summary judgment acknowledged that Lewis "encouraged her team members to build rapport with their clients, even through sexualization usually viewed as inappropriate for the workplace." App. A1. The district court further noted that "Lewis was often crude and overtly sexual with Rose and other team members." *Id.* at 6. Despite concluding that the harassment Rose experienced "was 'because of sex,'" the district court nevertheless found that the conduct Rose endured was not "severe or pervasive enough to affect the conditions of her employment." *Id.* at 14.

To reach this flawed conclusion, the district court engaged in a counting exercise—simply tallying up each instance of harassment rather than weighing each one under the totality of the circumstances—and discredited Rose's own lived experience by claiming that "little in the record indicates that [Rose] was contemporaneously bothered by Lewis's conduct." *Id.* at 14–15.

The record evidence demonstrates harassment that is sufficiently severe and pervasive to constitute an actionable hostile work environment. Lewis directed Rose to take her male customers out to dinner at least once per week. R. 46, Rose Dep. 118–19, 234; *see id.* at 95–96, 110–11, 121, 123–24. These weekly dinners resembled dates more than business dinners and were at night after typical work hours, lasted hours, involved alcohol, and were held at dimly lit restaurants. *Id.* at 127–28, 164–65, 234; *see id.* at 104, 118–19.

Rose testified that Lewis "told [Rose] to go out with doctors [the customers] at least once a week who she knew were toxic and she told me to have at least two drinks when I was going out with them." *Id.* at 118, 229. When Rose responded, "I really don't want to be drinking, I don't like this person, this person's abusive, it was, well, sorry, he's your

number one customer, you know, this is part of your job, things like that." *Id.* at 118. Lewis also told Rose, "you have to spend time with him, you need to have at least two drinks when you go out with him because you want him to have a good time." *Id.* at 121.

Ron Petitte, a male supervised by Lewis, testified that he chose when to go to dinners and did so "very rarely" while Rose did "quite often." R. 51-2, Petitte Dep. 24, 46, 62. As for Brian Lecurgo, another male supervised by Lewis, he testified, "It's a decision that I make." R. 51-1, Lecurgo Dep. 28–30; *see* R. 46, Rose Dep. 228–233.

Rose testified that Lewis smacked her butt and said that she had a "hot ass and made a bunch of other comments and stories over the years." R. 46, Rose Dep. 137. Over one dinner, Lewis told a story about a former male employee having sex with a stripper; Lewis told the story in front of Rose and to two male doctors who were Abbott clients. *Id.* at 142. Lewis also told stories over dinner about how she was "craving sex," about a time when she had sex in a closet, and when she put one of her male customers in the "doghouse" with his wife when she was at his house drinking wine. *Id.* at 147.

On another occasion, Rose observed Lewis grab an Abbott employee's breasts and make a sexually charged comment. *Id.* at 143–44. Following another dinner, Lewis remarked to Rose that a male customer would have "gone home with her" if she had wanted him to. *Id.* at 147. Rose testified that she was offended by Lewis' sex-based comments and conduct. *Id.* at 150.

After Rose was sexually assaulted by a customer, *Id.* at 153, 163, Lewis told Rose that it would be a "he said-she said" situation, downplaying the severity of the incident and discouraging Rose from seeking to hold the customer accountable. *Id.* at 152–56, 160–61; R. 43-21, Lewis Dep. 161. Although Lewis acknowledges that Rose was sexually assaulted by the customer, she attempted to shift blame to Rose, stating that Rose allowed the customer to caress her hair and "she let it go on for 20 minutes. She never told him to stop at any point." R. 43-21, Lewis Dep. 161. Lewis, however, was not present, and Rose did not consent to the customer's inappropriate touching in any form or fashion. R. 46, Rose Dep. 163. The incident was never investigated by Abbott. R. 43-21, Lewis Dep. 162.

## IV. Summary of the Argument

The district court erred in granting summary judgment on Rose's hostile work environment claim by evaluating the incidents of sexual harassment in isolation rather than considering their cumulative effect under the totality of the circumstances. Although the district court acknowledged that Rose was subjected to harassment because of her sex, it improperly concluded that the conduct was insufficiently severe or pervasive to be actionable. In reaching this conclusion, the district court minimized the cumulative impact of Lewis's repeated sexually inappropriate conduct, including: (a) requiring Rose to routinely wine-and-dine male clients while imposing no comparable expectations on her male counterparts; (b) subjecting Rose to unwelcome physical contact; and (c) exploiting her supervisory authority to foster and perpetuate an overtly sexualized workplace.

Under *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169 (2000), the severity and pervasiveness of harassment must be assessed in light of the totality of the circumstances, considering the cumulative effect of all incidents rather than evaluating each in isolation. Moreover, whether harassment is sufficiently severe or pervasive to

create a hostile work environment is ordinarily a question of fact for the jury. Accordingly, the district court improperly resolved disputed factual issues that should have been left to the jury, as the evidence was sufficient to establish a genuine issue of material fact as to whether Rose was subjected to a hostile work environment in violation of Ohio Rev. Code 4112.02(A).

The district court likewise erred in dismissing Rose's derivative aiding-and-abetting claim against Lewis under Ohio Rev. Code 4112.02(J). Ohio law permits individual liability for employees who knowingly participate in or facilitate their employer's discriminatory employment practices. Because the evidence was sufficient to permit a jury to find that Rose experienced an unlawful hostile work environment, and Lewis perpetrated and facilitated that harassment in her supervisory capacity, Rose's aiding-and-abetting claim should likewise have survived summary judgment.

## V. ARGUMENT

### A. The standard of review.

This Court reviews the district court's grant of summary judgment *de novo*. *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This Court construs all facts and reasonable inferences in the light most favorable to the nonmoving party, who in this case is Rose. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).

### B. The district court erred in dismissing Rose's hostile work environment claim by concluding as a matter of law that the facts presented were insufficient to demonstrate either severe or pervasive discrimination.

In order to establish a claim of hostile work environment based on sex in violation of Ohio Rev. Code 4112.02(A), the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter

directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the harassment was committed by a non-supervisor employee and the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hampel v. Food Ingredients Specialties, Inc.* 89 Ohio St.3d 169, (2000), paragraph two of the syllabus.

A claim for a hostile work environment must be tested both objectively and subjectively. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000). "That is, the plaintiff must subjectively believe that the harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must also be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment." *Turner v. Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010).

In assessing whether the conduct complained of is sufficiently severe or pervasive to constitute a hostile or abusive work environment, the district court "must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances,

including the cumulative effect of all episodes of sexual or other abusive treatment." *Hampel*, 89 Ohio St.3d at 181. As the Sixth Circuit has explained, "[w]hether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact.'" *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Jordan v. City of Cleveland,* 464 F.3d 584, 597 (6th Cir. 2006) (internal quotation marks omitted).) Thus, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999).

The district court erred by considering each incident of harassment Rose experienced in isolation from one another, rather than in the larger context of Rose's forced participation in the overtly sexualized workplace that Lewis fostered. *Compare* App. A1 (noting that Lewis "encouraged her team members to build rapport with their clients, even through sexualization usually viewed as inappropriate for the workplace") *and* App. A6 ("Lewis was often crude and overtly sexual with Rose and other team members.") *with* App. A14 ("Rose alleges two unrelated incidents of

unwelcome physical contact") *and* App. A15 ("little in the record indicates that [Rose] was contemporaneously bothered by Lewis's conduct"). By doing so, the district court unreasonably minimized the severity of the discrimination and downplayed its pervasiveness, and reduced the impact that Lewis had by virtue of her position as Rose's supervisor. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1251–57 (11th Cir. 2014) (distinguishing between conduct by supervisors and conduct by coworkers).

The "totality of the circumstances" standard "precludes the kind of analysis that carves the work environment into distinct harassing incidents to be judged each on its own merits. Instead, it is essential that the work environment be viewed as a whole, 'keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes.'" *Hampel*, 89 Ohio St.3d at 181 (quoting *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1524 (M.D. Fla. 1991)). Therefore, "the 'severe or pervasive' requirement does not present two mutually exclusive evidentiary choices, but reflects a unitary concept where deficiencies in the strength of one

factor may be made up by the strength in the other." *Hampel*, 89 Ohio St.3d at 181; *see Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) ("It is important to recall that harassing conduct does not need to be both severe and pervasive. One instance of conduct that is sufficiently severe may be enough." (citation omitted)).

In *Hampel*, the Supreme Court of Ohio noted in a landmark decision for Ohio law that while "[h]arassment 'because of * * * sex' is the sine qua non for any sexual harassment case * * *[,] 'harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.'" 89 Ohio St.3d at 178 (citing *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1988)). "[A]ctions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex." *Hampel*, 89 Ohio St.3d at 179. Simply put, "[h]arassment alleged to be because of sex need not be explicitly sexual in nature." *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir. 1999).

Here, however, the district court found that Rose *did* experience harassment based on sex—but it simply lacked the requisite severity or pervasiveness to be actionable. App. A14–15. Based on the evidence Rose

presented, the district court erred in reaching this conclusion, and the district court's grant of summary judgment in favor of Abbott Laboratories on Rose's claim under Ohio Rev. Code 4112.02(A) should be reversed.

### C. The district court erred in dismissing Rose's derivative aiding-and-abetting claim because the facts presented below were sufficient to set forth a primary hostile work environment claim.

To be held liable for aiding and abetting under Ohio Rev. Code 4112.02(J), the individual must be "involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee]." *Oster v. Huntington Bancshares Inc.*, No. 2:15-cv-02746, 2017 WL 2215462, at *22 (S.D. Ohio May 19, 2017) (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015)). Under Ohio law, an individual aids and abets discrimination if he "knowingly does something which he ought not to do * * * which assists or tends in some way to affect the doing of the thing which the law forbids." *Luke v. City of Cleveland*, No. 1:02-cv-01225, 2005 WL 2245187 at * 8 (N.D. Ohio Aug. 22, 2005) (citing *State v. Stepp*, 117 Ohio App.3d 561, 568 (4th Dist. 1997) (interpreting R.C. 4112.02(J))).

Although an employee cannot aid and abet themselves, an employee can be found individually liable under R.C. 4112.02(J) for aiding and abetting the unlawful employment practices of their employer. *Siwik v. Cleveland Clinic Found.*, No. 1:17-cv-01063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) (citing *Hauser v. Dayton Police Dep't*, 140 Ohio St.3d 268, 2014-Ohio-3636, ¶ 12 (finding R.C. 4112.02(J) "holds individual employees liable for their participation in discriminatory practices")). Here, the unlawful employment practice is sexual harassment.

Because the district court erred in dismissing Rose's hostile work environment claim under Ohio Rev. Code 4112.02(A), Rose's derivative claim against Lewis under Ohio Rev. Code 4112.02(J) is likewise viable and should have survived summary judgment.

## VI. CONCLUSION

Based on the foregoing, Rose respectfully requests that this Court reverse the trial court's grant of summary judgment to Abbott Laboratories and Lewis and remand the matter with instructions to have this case tried to a jury without delay.

Dated: October 29, 2026

Respectfully submitted,

/s/ Kevin M. Gross
Kevin M. Gross
ZIPKIN WHITING CO., L.P.A.
3637 Green Road, Second Floor
Beachwood, Ohio 44122
Phone: (216) 514-6400
Fax: (216) 514-6406
kgross.zipkinwhiting@gmail.com

*Counsel for Plaintiff-Appellant, Rachael Rose*

## Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2999 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac (Version 16.89) in 14-point Century Schoolbook font.

Dated: October 29, 2026

/s/ Kevin M. Gross
Kevin M. Gross

*Counsel for Plaintiff-Appellant,*
*Rachael Rose*

## Certificate of Service

I hereby certify that on October 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 29, 2026

/s/ Kevin M. Gross
Kevin M. Gross

*Counsel for Plaintiff-Appellant,*
*Rachael Rose*

## CIRCUIT RULE 30(D) CERTIFICATION

I hereby certify that all materials required by Cir. R. 30(a) and 30(b) are included in this appendix bound with the appellant's brief.

Dated: October 29, 2026

/s/ Kevin M. Gross
Kevin M. Gross

*Counsel for Plaintiff-Appellant,*
*Rachael Rose*

## APPENDIX TABLE OF CONTENTS

Opinion on Summary Judgment ........................................................ A1

Judgment Entry .................................................................................. A16

Notice of Appeal ................................................................................ A17

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHAEL ROSE,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC., and COLLEEN LEWIS,<br><br>Defendants. | No. 25 CV 1604<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Rachael Rose worked as an Endovascular Account Manager for Abbott Labs—a job that at times required wining and dining Abbott customers. One of Rose's supervisors, Colleen Lewis, encouraged her team members to build rapport with their clients, even through sexualization usually viewed as inappropriate for the workplace. Rose claims that, after she objected to those demands, the supervisor did everything in her power to have Rose terminated. After Rose got a new supervisor, she was investigated for discrepancies in her expense reports. Abbott Employee Relations concluded that Rose had knowingly submitted false expense reports and lied about it during the investigation. As a result, her employment was terminated. Rose then sued Abbott for wrongful termination and maintaining a hostile work environment, and Lewis for aiding and abetting discrimination. Abbott and Lewis now move for summary judgment on all of Rose's claims. [40]. For the reasons discussed below, the motion is granted.

## I. Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, I view the facts and draw all inferences in the light most favorable to the nonmoving party. *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). I do not weigh evidence or make credibility determinations—those tasks are entrusted to the jury. *Id.*

## II. Local Rule 56.1 and Evidentiary Rulings

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *See Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a)(2). The nonmoving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3).

Both statements of facts and additional material facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(d)(1)–(2). The responding party must cite specific,

admissible evidence to dispute an asserted fact and concisely explain how the cited material controverts the asserted fact. N.D. Ill. Local R. 56.1(e)(3). Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. *Id.*; *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). It is not a rule violation for a response to make an objection, but "[i]n the event that the objection is overruled, the failure to admit or dispute an asserted fact may constitute a waiver." N.D. Ill. Local R. 56.1(e)(2).

Abbott argues that every denial and objection, except for ¶ 31, in Rose's 56.1 response (as well as one admission) is improper. *See* [53] at 3.[1] Abbott is, for the most part, correct that Rose's responses either fail to cite specific evidence creating a genuine dispute of material fact or consist of impermissible legal arguments. That is not true for all of Rose's responses, however. Many of Rose's responses consist of only an objection without a denial or admission. *See* [49] ¶¶ 11, 13, 14, 16, 28, 34, 46, 49 & 50. Those responses do not violate 56.1, so are not admitted on that basis alone. I resolve all evidentiary objections first, then assess whether the remainder of the response (if any) is sufficient under local rules.

Rose makes numerous objections to Abbott's statement of material facts on the grounds of hearsay. *See* [49] ¶¶ 29, 44–47, 49, 50, 51, 53, 54, 59, 60 & 65. Those objections are sustained as to ¶¶ 44–47, 49, 50 & 53, and I do not consider those

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The docketed copy of Rose's deposition transcript does not include original page numbers, so those citations are to the page numbers in the header.

assertions of fact in deciding this motion. The objections to ¶¶ 29 & 54 are overruled because the testimony is not being offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The objection to ¶ 51 is overruled because the supporting exhibits are statements of a party opponent. Fed. R. Evid. 801(d)(2). The objections to ¶¶ 59, 60 & 65 are overruled because the supporting exhibit is a record kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6). Rose also objects throughout her response to Abbott's statement of material facts on the grounds of vagueness, ambiguity, immateriality, argumentativeness, mischaracterizing testimony, and lack of evidentiary support. Many of those generalized objections lack merit, and I overrule them. *See* [49] ¶¶ 5, 6, 11, 13, 14, 16, 17, 19–21, 28, 34, 36–39, 43, 55–57 & 70.

As to all facts for which Rose's response made an overruled objection but did not include any further denial, the facts are deemed admitted. N.D. Ill. Local R. 56.1(e)(2). The following facts are deemed admitted because the factual material cited does not create a genuine dispute: ¶¶ 1–4, 12, 20, 22, 23, 25–27, 30, 36, 39, 48, 52, 55–66 & 68–70. The following facts are deemed admitted because, after resolving any objections, the denials consist of only immaterial information and/or legal argumentation: ¶¶ 5, 7–10, 15 & 21. As to any facts for which Rose's response only disputes or admits a specific sentence or portion of the fact, the remainder of the fact is deemed admitted.

## III. Facts

In August 2019, Rachael Rose began working as an Endovascular Account Manager for Abbott Laboratories in Cleveland, Ohio. [49] ¶ 1. In that role, Rose

promoted Abbott products, managed hospital inventory, and built relationships with Abbott customers through social engagements such as dinners and coffee. [49] ¶¶ 10, 24 & 27. From the date of her hire (except for a few months between the fall of 2023 and February 2024) Colleen Lewis was Rose's supervisor. [49] ¶ 22. Lewis lived in Pennsylvania and managed a team of employees in Ohio. [49] ¶ 22. Rose and Lewis mostly communicated over text, phone, email, and Microsoft Teams, but they did see each other in person four or five times per year. [49] ¶ 23.

As part of her job responsibilities, Rose was expected to go out to dinner with Abbott customers at least once a week to build a relationship. [49] ¶ 24. Rose and Abbott dispute whether male employees were also told to go out to dinner at least once per week, or if they were given more choice in scheduling dinners. [49] ¶ 24. Lewis told Rose that she should have at least two drinks when going out for dinner with clients. [54] ¶ 22. Rose had discretion about which customers to invite to any particular dinner and could invite co-workers to attend as well. [49] ¶ 26, 27. A few times a year, the dinners would be one-on-one with the customer. [49] ¶ 26.

During one such dinner, a male customer made sexual advances at Rose, including biting her on the ear and stroking her hair. [49] ¶ 38; [54] ¶ 33. When Rose reported the incident to Lewis, Lewis called Rose, agreed the conduct was not appropriate, and told Rose that she did not have to work with the customer again, including at a clinical event the following day. [49] ¶ 39. Rose decided to still attend that clinical event, but had her assistant cover future cases with that customer, which

Lewis supported. [49] ¶ 42. Lewis reported the incident to Abbott Employee Relations. [49] ¶ 41.

Lewis was often crude or overtly sexual with Rose and other team members. On one occasion, she grabbed the breasts of a co-worker (not Rose) and commented "these things are great." [49] ¶ 29. On another, she told Rose that she "had a hot ass" and smacked her on the butt. [49] ¶ 30. Lewis also shared sexual anecdotes that Rose found offensive or harassing, including stories about a former employee who had sex with a stripper, having sex with her male fiancé in a closet, and going to drink at a customer's home. [49] ¶ 28, 32. Rose does not allege that anyone other than Lewis and the customer who bit her ear sexually harassed her during her employment with Abbott. [43-1] at 139, 230.

In the fall of 2023, Rose's supervisors noticed she had submitted excessive out-of-pocket expenses. [43-22]. Due to a company re-alignment, Lewis was not Rose's manager from that fall until February 5, 2024. [49] ¶¶ 43, 52. For some of that gap, Tim Powers was Rose's interim manager. [49] ¶ 43. In December 2023, Rose received an email from Powers reminding her and the rest of the team that Abbott conducts internal audits of business expenses and that they are required to use the Abbott Credit Card for business expenses. [49] ¶ 48. When Rose continued to submit expense reports seeking reimbursement for out-of-pocket expenses, Lewis and Powers met with her to discuss the issue. [49] ¶¶ 51, 54, 55.

Abbott Employee Relations investigated Rose's expenses from January 2023 to January 2024 and determined that she knowingly filed multiple false expense

reports. [43-22]. Rose submitted parking expense charges on 13 occasions totaling $226 for hospitals and clinics with no parking or valet fees. [43-22]. On 23 other occasions, she submitted parking expense fees for more than the hospitals charged. [43-22]. In total, over 13 months, Rose submitted 126 out of pocket expenses for $4,856.73, more than double that of her next highest peer. [43-22]. In the seven weeks after the email from Powers reminding the team of the requirement to use the corporate credit card, Rose still submitted 22 out of pocket transactions totaling $551.77. [43-22].

When interviewed about her expense reports, Rose initially explained that her submissions varied depending on the fee, or the bill denominations she had on her, or whether the valet was helping carry a lot of materials. [43-22]. After she was told that those locations have no fees or valets, she changed her explanation and said that more senior sales representatives, who she refused to name, had told her to put coffee expenses under parking to make it easier when submitting expense reports. [43-22]. Rose also explained that she submitted so many out-of-pocket transactions because she leaves her wallet in the car and uses Apple Pay on her Apple Watch. [43-22]. When Employee Relations reviewed the Apple Pay statement she voluntarily provided, however, it only accounted for $440.23 out of the $1,117.83 in out-of-pocket expenses she submitted between November 24, 2023 and January 23, 2024. [43-22].

The investigation concluded that Rose did not provide a plausible explanation for her excessive out-of-pocket expenses and initially lied about paying parking and valet expenses at locations with free parking and no valets. [43-22]. Because those

were violations of Abbott's Code of Conduct, termination was recommended. [43-22]. On or about March 26, 2024, Abbott terminated Rose's employment. [49] ¶ 65. After her termination, Rose texted Lewis apologizing for "the damage caused by [her] lapse in judgment" and stating that she understood "this was my doing and my mistake." [49] ¶ 66. Rose was eventually replaced by a new male employee. [54] ¶ 3.

## IV. Analysis

In her complaint, Rose asserted both state and federal claims against Abbott for wrongful termination and creating a hostile work environment. [16] ¶¶ 65–99. Abbott moves for summary judgment on all of Rose's claims. [40]; [41] at 3. In her response to the motion for summary judgment, Rose only requests that I deny the motion as to her state-law claims. [52]. Since Rose has abandoned them, Abbott is entitled to summary judgment on the federal claims. That leaves three claims, all under Ohio law: two claims against Abbott for wrongful termination and maintaining hostile work environment, and a claim against Lewis for aiding and abetting discrimination.

Rose filed suit in the Northern District of Ohio and the case was transferred to the Northern District of Illinois pursuant to a forum selection clause in her employment agreement. [22]. "Although the law of the transferor court continues to apply when a diversity case is transferred from one district court to another under § 1404(a), the transferee court is usually 'free to decide federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit.'" *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (quoting *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C.Cir.1987)) (cleaned up).

Where federal law is applicable, I am bound by Seventh Circuit precedent and treat Sixth Circuit precedent as authoritative. For issues of Ohio law, I defer to the interpretations provided by Ohio courts. Of course, the Sixth Circuit (while also bound to defer to Ohio courts for interpretations of Ohio law) possesses more familiarity with Ohio law than courts in this circuit, so I consider Sixth Circuit case law especially persuasive in this case, even though I am not bound by it.

Discrimination claims under Ohio law mirror federal law.[2] *See Williams v. Akron*, 107 Ohio St.3d 203, 205 (2005). Under Ohio law, it is unlawful for any employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against" any person with respect to any matter related to employment because of their sex. Ohio Rev. Code § 4112.02(A). Title VII makes it unlawful for an employer to discriminate against any individual with respect to the terms or conditions of their employment because of their sex. 42 U.S.C. § 2000e-2.

Because Ohio courts apply federal standards for employment discrimination when assessing such claims under Ohio law, I do the same. At the summary-judgment stage, the proper question to ask is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's sex caused the plaintiff's discharge or other adverse employment action. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d

[2] Neither party claims Illinois law applies here, but it would not change the outcome. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) ("Illinois courts apply the federal Title VII framework to IHRA claims."). *See* [8-4] at 7, ¶ 15 ("the relationship of the parties shall be determined, in all respects under the laws of Illinois").

494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

One method of analyzing a discrimination case is the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Williams v. Akron*, 107 Ohio St.3d at 205 (adopting the same analytical framework for proving a discrimination claim under Ohio law). Under *McDonnell Douglas*, the plaintiff must first meet her burden of production by establishing that: (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment.[3] *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015); *Patterson v. Kent State Univ.*, 155 F.4th 635, 645 (6th Cir. 2025). "The burden then shifts to the employer to present a 'legitimate, non-discriminatory reason' for the employment decision." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023) (citing *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021)). "If the employer presents a legitimate reason, the burden shifts back to the employee to show the proffered reason is a pretext for discrimination." *Vichio*, 88 F.4th at 691 (citing *Bless*, 9 F.4th at 574).

Regardless of the framework used, the ultimate question is whether the evidence, considered as a whole, would permit a reasonable factfinder to conclude

[3] Rose contends that the fourth element is different under Ohio law, but her formulation is just a different way of wording the disparate treatment requirement for other factual scenarios. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

that the plaintiff's sex caused the discharge or other adverse employment action. *Ortiz*, 834 F.3d 760, 765 (7th Cir. 2016); *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) (citing *Ortiz*, 834 F.3d at 765) ("The labels we might attach to evidence—'direct' or 'indirect'—do not matter. Evidence counts as long as it is relevant to the purported reasonable jury's inquiry."). Rose analyzes her case under the burden-shifting framework of *McDonnell Douglas*, so I do as well.

Abbott argues that Rose has failed to make a prima facie showing because she cannot show that she met her employer's legitimate expectations. [41] at 4–6; [53] at 6–7. Whether the employee performed her job to her employer's expectations overlaps with pretext, so the two can be dealt with at once. *See Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010); *see also Smith v. City of Union, Ohio*, 144 F.4th 867, 874 (6th Cir. 2025) (moving straight to the question of pretext).

To give rise to pretext, "explanations must actually be shifting and inconsistent." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016) (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003)). "Merely providing multiple, or additional, reasons for an adverse employment decision does not establish pretext." *Saud v. DePaul Univ.*, 154 F.4th 563, 569 (7th Cir. 2025). "Pretext can be proven, among other ways, by evidence (1) that the employer's explanation has no basis in fact; (2) of 'ambiguous or suggestive comments or conduct;' or (3) of 'better treatment of people similarly situated but for the protected characteristic.'" *Paterakos v. City of Chi.*, 147 F.4th 787, 797 (7th Cir. 2025);

*see also Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 775 (6th Cir. 2025) ("An employee may show that an employer's proffered reason for terminating him was pretext by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.") (citations omitted). The pretext analysis boils down to a "commonsense inquiry": "did the employer fire the employee for the stated reason or not?" *City of Union*, 144 F.4th at 874 (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012)).

While Rose claims that Abbott had "changing and inconsistent reasons for why Rose was terminated," she has not identified any reason other than her false expense reports and dishonesty. *See* [52] at 4–5. Abbott was initially concerned about her false expense reports, and Rose's dishonesty during the investigation of her expense reports created an additional reason. That is not shifting or inconsistent. Those reasons are also well grounded in fact, as Rose admits that she charged expenses to parking that were not parking expenses and submitted expenses for parking fees at hospitals where parking was free. [43-1] at 214. And while Rose identified a male employee who used cash to pay for parking expenses and was not disciplined, [54] ¶¶ 7–9, he was not similarly situated because—during the relevant period—he used his corporate card for parking, [51-2] at 25:17–28:1, and there is nothing in the record to indicate that he ever submitted a reimbursement for parking at a hospital that did not charge for parking, *see* [51-2]. Abbott provided a legitimate, non-discriminatory

reason for its employment decision, and Rose has not carried her burden of rebutting it as pretextual.

As with claims alleging an adverse employment action based on sex, Ohio courts also look to federal case law interpreting Title VII for sexual harassment claims. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 175 (2000) (quoting *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981)) ("In prior cases, 'we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'").

To prevail on a hostile work environment claim, Rose must establish that: "(1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Anderson v. Mott Street*, 104 F.4th 646, 652 (7th Cir. 2024) (quoting *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018)); *Hampel*, 89 Ohio St.3d at 176–77 (a hostile work environment claim based on sexual harassment requires "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,'" and (4) there is a basis for employer liability). To determine whether

harassment is severe or pervasive, I consider "the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Anderson*, 104 F.4th at 652 (quoting *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012)).

In *Oncale*, the Supreme Court held "that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). The Ohio Supreme Court has expressly adopted the interpretation of Title VII in *Oncale* as persuasive and applicable to Ohio Rev. Code § 4112.02(A). *Hampel*, 89 Ohio St.3d at 178. *Oncale* does not, however, create a distinct test for same-sex sexual harassment claims, as Abbott implies. *Oncale* provides three examples of how a trier of fact might infer discrimination in a case alleging same-sex harassment, but those are not exhaustive. The operative question is simply whether the claimed discrimination is "because of sex." *Oncale*, 523 U.S. at 79.

Reading the record in the light most favorable to Rose, a reasonable jury could conclude that the alleged harassment—smacking her butt, pressuring her to drink, expecting her to have weekly dinners with clients—was "because of sex," but not that it was severe or pervasive enough to affect the conditions of her employment. Rose alleges two unrelated incidents of unwelcome physical contact: a strike to her butt that she says did not "extremely upset" her, and a sexual advance from a customer that Lewis immediately reported and isolated Rose from. Beyond physical contact

with Rose, Lewis grabbed another co-worker's breasts in a team meeting, told Rose she "had a hot ass," and told offensive stories in mixed-gender company. "While unfortunate, such 'off-color comments, isolated incidents, teasing, and other unpleasantries' are not enough for a Title VII sexual harassment claim." *Anderson*, 104 F.4th at 652 (quoting *Swyear*, 911 F.3d at 881). Rose also never reported any of Lewis's actions to Abbott Employee Relations, and little in the record indicates that she was contemporaneously bothered by Lewis's conduct. Accordingly, Abbott is entitled to summary judgment in its favor on Rose's hostile work environment claim.

Rose's final claim is against Lewis for aiding and abetting discrimination in violation of Ohio Rev. Code § 4112.02(J). That statute, in relevant part, makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." *Id.* Because neither Abbott nor Lewis committed any unlawful discriminatory practices under Ohio law, the aiding and abetting claim also fails.

## V. Conclusion

Defendants' motion for summary judgment, [40], is granted. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: June 9, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Rachael Rose,<br><br>Plaintiff,<br><br>v.<br><br>Abbott Laboratories, Inc. et al.,<br><br>Defendants. | Case No. 25-cv-01604<br>Judge Manish Shah |

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒ in favor of defendants Abbott Laboratories, Inc. and Colleen Lewis,
and against plaintiff Rachael Rose.

Defendants shall recover costs from plaintiff.

---

☐ other:

---

This action was *(check one)*:

☐ tried by a jury with Judge Manish Shah presiding, and the jury has rendered a verdict.
☐ tried by Judge Manish Shah without a jury and the above decision was reached.
☒ decided by Judge Manish Shah on a motion.

Date: 6/9/2026

Thomas G. Bruton, Clerk of Court

/Susan McClintic , Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RACHAEL ROSE,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC., *and* COLLEEN LEWIS,<br><br>Defendants. | ) | CIVIL ACTION NO. 1:25-cv-01604<br><br>JUDGE MANISH SURESH SHAH |

**NOTICE OF APPEAL**

Plaintiff Rachael Rose hereby gives notice of appeal to the United States Court of Appeals for the Seventh Circuit from the final judgment entered on June 9, 2026.

Respectfully submitted,

/s/ Kevin M. Gross

Kevin M. Gross (Ohio Bar. No. 0097343)
ZIPKIN WHITING CO., L.P.A.
3637 Green Road, Second Floor
Beachwood, Ohio 44122
Phone: (216) 514-6400
Fax: (216) 514-6406
Email: kgross.zipkinwhiting@gmail.com

*Counsel for Plaintiff Rachael Rose*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Notice of Appeal* was served via the Court's CM/ECF system on July 8, 2026, upon:

Uma Chandrasekaran, Esq.
SEYFARTH SHAW, LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Phone: (312) 460-5000
Fax: (312) 460-7000
Email: uchandrasekaran@seyfarth.com

*and*

Victoria S. Tolbert, Esq.
SEYFARTH SHAW, LLP
300 South Tryon Street, Suite 400
Charlotte, North Carolina 28202
Phone: (704) 925-6060
Email: vtolbert@seyfarth.com

*Counsel for Defendants Abbott Laboratories, Inc., and Colleen Lewis*

/s/ Kevin M. Gross
Kevin M. Gross (Ohio Bar No. 0097343)

*Counsel for Plaintiff Rachael Rose*